IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| David's Auto Shredding, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. 08-410 |
| The Shredder Company, LLC, a limited liability company; Alton Scott Newell, II, an individual, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

David's Auto Shredding, Inc. ("DAS"), for its complaint against the Defendants The Shredder Company, LLC ("TSC"), and Alton Scott Newell, II ("Newell"), states as follows:

### **Parties**

1. DAS is a corporation organized and existing under the laws of the State of Alabama, maintains its principal place of business in Mobile, Alabama and is engaged in the business of automobile shredding.

2. Defendant TSC is, upon information and belief, an entity organized and existing under the laws other than the State of Alabama, doing business in the State of

{397462.1}

Alabama.  Defendant TSC is engaged in the business of manufacturing, selling and distributing automobile shredding equipment.

3. Defendant Newell is, upon information and belief, an officer, director, agent and/or employee of TSC and is an individual resident of the State of Texas.

**Jurisdiction and Venue**

4. The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.  Jurisdiction is predicated on diversity of citizenship and the amount in controversy pursuant to 28 U.S.C. § 1332.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims for relief herein have occurred in said District.

**Factual Allegations**

6. On or about May 11, 2006, DAS entered into a sales agreement with TSC to purchase a 60 SXS Shredder with Feeding System for use at its Mobile County location.  The May 11, 2006, sales agreement is attached hereto as Exhibit A and incorporated herein by reference.  In conjunction with the May 11, 2006, sales agreement, DAS entered into a subsequent sales agreement with TSC on or about May 19, 2006, to purchase the additional equipment necessary for operation of the shredder.  The May 19, 2006, sales agreement is attached hereto as Exhibit B and incorporated herein by reference.

7. The May 19, 2006, sales agreement includes the purchase of an infeed conveyor and anti-vibration spring and damper units as part of the 60 SXS Shredder

System. Certain downstream equipment, including an under shredder oscillator, a non-ferrous platform and non ferrous separation equipment are also included in the May 19, 2006, sales agreement.

8. The payment terms of the May 19, 2006, sales agreement included a 10% down payment, then 80% of the value of partial shipments to be invoiced as the partial shipments were ready to be shipped. The remaining 10% was to be paid 90 days after the partial shipment and partial payments from which the 80% payments were made.

9. Pursuant to the Payment Terms under the Purchase Price section of the May 19, 2006, sales agreement, TSC agreed to deliver partial shipments within 10 days of receipt of the 80% payment.

10. On or about December 18, 2006, TSC separately invoiced DAS, by Invoice Number 3266, for the infeed conveyor, the anti-vibration spring with damper unit and the under shredder oscillator. Invoice Number 3266 is attached hereto as Exhibit C. The sales price for the infeed conveyor was $421,000.00.

11. The total amount due in Invoice Number 3266 for all three pieces of equipment was $504,500.00. The stated payment terms were "due now."

12. The due date for delivery of all three pieces of equipment in Invoice Number 3266 was January 17, 2007.

13. DAS obtained a loan with First Source Bank to fund the purchase of the three pieces of equipment in Invoice Number 3266. DAS used the First Source Bank loan proceeds to pay Invoice Number 3266 for the infeed conveyor, anti-vibration spring

with damper unit and under shredder oscillator. Payment was made via wire transfer from those loan proceeds on or about December 22, 2006.

14. The monthly payment for the First Source Bank loan was $10,948.00.

15. The infeed conveyor was not delivered within 10 days of the December 22, 2006, payment.

16. The infeed conveyor was not delivered by January 17, 2007.

17. The infeed conveyor was not delivered despite repeated verbal requests by DAS and verbal assurances by Newell and TSC that delivery was forthcoming.

18. On or about March 3, 2007, TSC gave DAS a bill of sale for the new infeed conveyor, including the anti-vibration springs and damper units and under shredder oscillator.

19. The bill of sale states that the new infeed conveyor, including anti-vibration springs and damper units and under shredder oscillator, are free from all encumbrances and that TSC had a good right to sell the same.

20. From the time of payment in full for the infeed conveyor until May of 2007, Newell represented to David Hickman ("Hickman"), President of DAS, and other agents for DAS that the infeed conveyor was not completed.

21. In May of 2007, DAS independently learned that the infeed conveyor had been completed in December of 2006.

22. When confronted with the information that the infeed conveyor had been completed in December of 2006, Newell then represented to Hickman and other agents of DAS that the infeed conveyor would be delivered after DAS paid for additional

equipment included in the May 19, 2006, sales agreement. This additional equipment included, among other things, four non-ferrous conveyors and a non-ferrous platform. Newell represented that the additional equipment would be delivered in a timely manner in accordance with the May 19, 2006, sales agreement.

23. In addition, Newell confirmed that the infeed conveyor was completed and represented that it was ready for shipment.

24. Newell further represented that the additional equipment, including the non-ferrous platform and four non-ferrous conveyors, were completed and ready for shipment.

25. In reliance upon these assurances from Newell, DAS obtained a loan from Southern Development Council to fund the purchase of the additional equipment, including the non-ferrous platform and four non-ferrous conveyors. DAS used the Southern Development Council loan proceeds to pay TSC a total of $939,000.00 for the additional equipment, including the non-ferrous platform and four non-ferrous conveyors. Payment was made via wire transfer from those loan proceeds on or about May 27, 2007.

26. The monthly payment on the Southern Development Council loan was approximately $15,750.00, representing interest payments only.

27. The non-ferrous platform makes up approximately $40,000.00 of the $939,000.00 purchase price paid. The four non-ferrous conveyors make up approximately $200,000.00 of the $939,000.00 purchase price paid.

28. The non-ferrous platform and four non-ferrous conveyors were not delivered despite repeated verbal and written requests by DAS and verbal assurances by Newell and TSC that delivery was forthcoming.

29. Based upon information and belief, the non-ferrous platform and four non-ferrous conveyors were never completed.

30. Based upon information and belief, the infeed conveyor was completed in December of 2006 by Hustler Conveyor Company, a company with whom TSC subcontracted the manufacture of the infeed conveyor.

31. Over the course of several months, DAS continued to demand delivery of the infeed conveyor, non-ferrous platform and four non-ferrous conveyors. TSC repeatedly refused to deliver the infeed conveyor, the non-ferrous platform and four non-ferrous conveyors unless DAS purchased future replacement parts for the 60 SXS Shredder System at a cost of approximately $60,000.00 and paid an additional $200,000.00, for items and amounts which are not, and never were, part of the May 11, 2006, or May 19, 2006, sales agreements.

32. DAS paid the amounts required by the May 11, 2006, and May 19, 2006, sales agreements in full, with the exception of approximately $95,000.00 for two non-ferrous conveyors which TSC represented as not completed, and, therefore, not ready for shipment. These two non-ferrous conveyors are in addition to the four non-ferrous conveyors at issue herein.

33. On or about October 9, 2007, as a result of TSC's failure to deliver the infeed conveyor, the four non-ferrous conveyors and the non-ferrous platform, despite

several demands from DAS for delivery of the same, DAS exercised its right to "cover" the failed delivery of the equipment and canceled the remaining portion of the May 19, 2006, sales agreement for the two additional non-ferrous conveyors.

34. DAS demanded a refund for the undelivered equipment.

35. TSC has refused to refund DAS the amounts paid for the undelivered equipment.

36. DAS has purchased a substitute infeed conveyor, non-ferrous platform and non-ferrous conveyors. The substitute infeed conveyor was not delivered until December 19, 2007.

37. DAS incurred additional installation expenses, including engineering and electrical expenses, to fit the substitute equipment into the 60 SXS Shredder and feeding system.

38. DAS closed on its permanent loan for its equipment on March 15, 2008.

## Count I
### (Innocent Misrepresentation/Legal Fraud)

39. Plaintiff, DAS, realleges and incorporates by reference the factual allegations of paragraphs 1-38 of the Complaint as if specifically set forth herein.

40. TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, innocently or by mistake misrepresented the status and existence of the infeed conveyor, non-ferrous platform and four non-ferrous conveyors to be delivered on behalf of Plaintiff.

{397462.1}   7

41. These representations were material and were made with the intention that DAS act in reliance thereon.

42. At the time Newell and/or other agents for TSC made these representations, Newell and/or TSC did not intend to deliver the infeed conveyor, the non-ferrous platform or the four non-ferrous conveyors.

43. DAS reasonably relied upon these material misrepresentations by providing substantial monetary outlays in the form of payment in full for the infeed conveyor and the additional equipment, as well as interest payments.

44. Plaintiff has been damaged as a direct and proximate result of the innocent misrepresentations by TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, in that Plaintiff has incurred substantial monetary outlays for an infeed conveyor, non-ferrous platform and four non-ferrous conveyors which it has not received.

45. As a direct and proximate result of the aforesaid innocent misrepresentations and failure to deliver, Plaintiff has also incurred the additional expense of interest payments on the loan used to pay the invoice prices for the infeed conveyor, non-ferrous platform and four non-ferrous conveyors.

46. As a direct and proximate result of the aforesaid innocent misrepresentations and failure to deliver, Plaintiff has also incurred the additional expense of purchasing a substitute infeed conveyor, non-ferrous platform and non-ferrous conveyors in an effort to "cover" the infeed conveyor, non-ferrous platform and non-ferrous conveyor, which were originally to be delivered by TSC by and through its

authorized agents, employees, officers and/or directors, including but not limited to, Newell.  Additional installation expenses, including engineering and electrical expenses, were also incurred.

47. In addition, as a direct and proximate result of the aforesaid innocent misrepresentations and failure to deliver, Plaintiff was unduly delayed in completing and operating its shredder, causing lost profits and a delay in closing on the permanent financing for its operation.

WHEREFORE, the premises considered, Plaintiff demands judgment for compensatory damages against TSC and Alton Scott Newell, II, individually, in excess of the jurisdictional limits of this Court, and costs of court.

## Count II
## (Intentional Misrepresentation)

48. Plaintiff, DAS, realleges and incorporates by reference the factual allegations of paragraphs 1-38 of the Complaint as if specifically set forth herein.

49. TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, intentionally or recklessly misrepresented the status and existence of the infeed conveyor, non-ferrous platform and four non-ferrous conveyors to be delivered on behalf of Plaintiff to deceive Plaintiff.

50. These representations were material and were made with the intention that DAS act in reliance thereon.

51. At the time Newell and/or other agents for TSC made these representations, Newell and/or TSC did not intend to deliver the infeed conveyor, the non-ferrous platform or the four non-ferrous conveyors.

52. DAS reasonably relied upon these material misrepresentations by providing substantial monetary outlays in the form of payment in full for the infeed conveyor and the additional equipment, as well as interest payments.

53. The legal fraud of TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, was an intentional misrepresentation which was gross, wanton, oppressive and/or malicious and committed with the intention on the part of TSC of depriving Plaintiff of its legal rights and/or causing injury.

54. Plaintiff has been damaged as a direct and proximate result of the intentional misrepresentations by TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, in that Plaintiff has incurred substantial outlays of monies in the form of full payment for the infeed conveyor, full payment for the additional equipment, and interest payments for an infeed conveyor and other equipment that was never actually received.

55. As a direct and proximate result of the aforesaid intentional misrepresentations and failure to deliver, Plaintiff has also incurred the additional expense of purchasing a substitute infeed conveyor, non-ferrous platform and non-ferrous conveyors in an effort to "cover" the infeed conveyor, non-ferrous platform and non-ferrous conveyor, which were originally to be delivered by TSC by and through its

authorized agents, employees, officers and/or directors, including but not limited to, Newell. Additional installation expenses, including engineering and electrical expenses, were also incurred.

56. In addition, as a direct and proximate result of the aforesaid intentional misrepresentations and failure to deliver, Plaintiff was unduly delayed in completing and operating its shredder, causing lost profits and a delay in closing on the permanent financing for its operation.

WHEREFORE, the premises considered, Plaintiff demands judgment against TSC and Alton Scott Newell, II, individually, for compensatory damages in excess of the jurisdictional limits of this Court, together with such punitive damages as the jury may award, and costs of court.

## Count III
### (Deceit)

57. Plaintiff, DAS, realleges and incorporates by reference the factual allegations of paragraphs 1-38 of the Complaint as if specifically set forth herein.

58. TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, willfully misrepresented the status and existence of the infeed conveyor, non-ferrous platform and four non-ferrous conveyors to be delivered on behalf of Plaintiff in an effort to induce Plaintiff to outlay substantial sums of money for equipment that was never actually delivered, or recklessly misrepresented such facts, or suppressed such facts with intent to mislead.

59. These representations were material and were made with the intention that DAS act in reliance thereon.

60. At the time Newell and/or other agents for TSC made these representations, Newell and/or TSC did not intend to deliver the infeed conveyor, the non-ferrous platform or the four non-ferrous conveyors.

61. DAS reasonably relied upon these material misrepresentations by providing substantial monetary outlays in the form of payment in full for the infeed conveyor and the additional equipment, as well as interest payments.

62. The deceit of TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, was an intentional misrepresentation which was gross, wanton, oppressive and/or malicious and committed with the intention on the part of TSC of depriving Plaintiff of its legal rights and/or causing injury.

63. Plaintiff has been damaged as a direct and proximate result of the deceit by TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, in that Plaintiff was forced to outlay substantial sums of monies for an infeed conveyor and other equipment that was never received.

64. As a direct and proximate result of the aforesaid deceit and failure to deliver, Plaintiff has also incurred the additional expense of purchasing a substitute infeed conveyor, non-ferrous platform and non-ferrous conveyors in an effort to "cover" the infeed conveyor, non-ferrous platform and non-ferrous conveyor, which were originally to be delivered by TSC by and through its authorized agents, employees,

officers and/or directors, including but not limited to, Newell. Additional installation expenses, including engineering and electrical expenses, were also incurred.

65. In addition, as a direct and proximate result of the aforesaid deceit and failure to deliver, Plaintiff was unduly delayed in completing and operating its shredder, causing lost profits and a delay in closing on the permanent financing for its operation.

WHEREFORE, the premises considered, Plaintiff demands judgment against TSC and Alton Scott Newell, II, individually, for compensatory damages in excess of the jurisdictional limits of this Court, together with such punitive damages as the jury may award, and costs of court.

## Count IV
### (Fraudulent Deceit)

66. Plaintiff, DAS, realleges and incorporates by reference the factual allegations of paragraphs 1-38 of the Complaint as if specifically set forth herein.

67. TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, fraudulently deceived Plaintiff in that it suggested as a fact the status and existence of the infeed conveyor, non-ferrous platform and four non-ferrous conveyors, which was not true and nor did TSC believe it to be true, asserted as a fact the status and existence of the infeed conveyor, non-ferrous platform and four non-ferrous conveyors, which was not true and TSC had no reason or ground for believing it to be true and promised to deliver the infeed conveyor, non-ferrous platform and four non-ferrous conveyors without any intention of performing.

68. These representations were material and were made with the intention that DAS act in reliance thereon.

69. At the time Newell and/or other agents for TSC made these representations, Newell and/or TSC did not intend to deliver the infeed conveyor, non-ferrous platform or the four non-ferrous conveyors. In addition, Newell and/or other agents did not intend to deliver the in a timely manner.

70. DAS reasonably relied upon these material misrepresentations by providing substantial monetary outlays in the form of payment in full for the infeed conveyor and the additional equipment, as well as interest payments.

71. The fraudulent deceit of TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, was an intentional misrepresentation which was gross, wanton, oppressive and/or malicious and committed with the intention on the part of TSC of depriving Plaintiff of its legal rights and/or causing injury.

72. Plaintiff has been damaged as a direct and proximate result of the fraudulent deceit by TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, in that Plaintiff outlaid substantial sums of monies for an infeed conveyor, non-ferrous platform and four non-ferrous conveyors that were never received.

73. As a direct and proximate result of the aforesaid fraudulent deceit and failure to deliver, Plaintiff has also incurred the additional expense of purchasing a substitute infeed conveyor, non-ferrous platform and non-ferrous conveyors in an effort

to "cover" the infeed conveyor, non-ferrous platform and non-ferrous conveyor, which were originally to be delivered by TSC by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell.  Additional installation expenses, including engineering and electrical expenses, were also incurred.

74. In addition, as a direct and proximate result of the aforesaid fraudulent deceit and failure to deliver, Plaintiff was unduly delayed in completing and operating its shredder, causing lost profits and a delay in closing on the permanent financing for its operation.

WHEREFORE, the premises considered, Plaintiff demands judgment against TSC and Alton Scott Newell, II, individually, for compensatory damages in excess of the jurisdictional limits of this Court, together with such punitive damages as the jury may award, and costs of court.

## Count V
### (Fraudulent Suppression)

75. Plaintiff, DAS, realleges and incorporates by reference the allegations of paragraphs 1-38 of the Complaint as if specifically set forth herein.

76. TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, fraudulently suppressed the status and existence of the infeed conveyor, non-ferrous platform and four non-ferrous conveyors.

77. This suppression was material and was made with the intention that DAS act in reliance thereon.

78. At the time Newell and/or other agents for TSC suppressed these material facts, Newell and/or TSC did not intend to deliver the infeed conveyor, non-ferrous platform or the four non-ferrous conveyors.

79. DAS reasonably relied upon the suppression of these material facts by providing substantial monetary outlays in the form of payment in full for the infeed conveyor and the additional equipment, as well as interest payments.

80. The fraudulent suppression of TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, was occasioned by malice, oppression, wantonness and fraud sufficient to support an award of punitive damages.

81. Plaintiff has been damaged as a direct and proximate result of the fraudulent suppression by TSC, by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell, in that Plaintiff outlaid substantial sums of monies for an infeed conveyor, non-ferrous platform and four non-ferrous conveyors that were never received.

82. As a direct and proximate result of the aforesaid fraudulent suppression and failure to deliver, Plaintiff has also incurred the additional expense of purchasing a substitute infeed conveyor, non-ferrous platform and non-ferrous conveyors in an effort to "cover" the infeed conveyor, non-ferrous platform and non-ferrous conveyor, which were originally to be delivered by TSC by and through its authorized agents, employees, officers and/or directors, including but not limited to, Newell. Additional installation expenses, including engineering and electrical expenses, were also incurred.

83. In addition, as a direct and proximate result of the aforesaid fraudulent suppression and failure to deliver, Plaintiff was unduly delayed in completing and operating its shredder, causing lost profits and a delay in closing on the permanent financing for its operation.

WHEREFORE, the premises considered, Plaintiff demands judgment against TSC and Alton Scott Newell, II, individually, for compensatory damages in excess of the jurisdictional limits of this Court, together with such punitive damages as the jury may award, and costs of court..

## Count VI
### (Conversion)

84. Plaintiff, DAS, realleges and incorporates by reference the factual allegations of paragraphs 1-38 of the Complaint as if specifically set forth herein.

85. The foregoing acts by TSC constitute conversion. Specifically, TSC converted to its own use the $421,000.00 wire transfer from loan proceeds made on December 22, 2006, for the infeed conveyor, and $240,000.00 of the $939,000.00 wire transfer from loan proceeds made on May 27, 2007, for the non-ferrous platform and four non-ferrous conveyors, none of which have been received. Said converted wire transfers total $661,000.00.

86. TSC converted these items to its own use and benefit, retaining the proceeds thereof or distributing the proceeds and/or equipment to others.

87. TSC refused to return these items despite demand from DAS.

88. As a direct and proximate result of the conversion by TSC, as aforesaid, the Plaintiff has suffered injuries and damages including the wire transfer of loan proceeds with no corresponding receipt of equipment.

89. The action of TSC was willful, malicious, wanton and oppressive in violation of Plaintiff's rights in the loan proceeds and corresponding equipment.

WHEREFORE, Plaintiff demands judgment against TSC for compensatory and punitive damages in an amount deemed appropriate by the jury, plus costs of court.

## Count VII
### (Unjust Enrichment)

90. Plaintiff, DAS, realleges and incorporates by reference the factual allegations of paragraphs 1-38 of the Complaint as if specifically set forth herein.

91. TSC and Newell have been unjustly enriched to the detriment of DAS by receiving wire transfers of loan proceeds made on December 22, 2006, and on May 27, 2007, for equipment that has not been received.

92. TSC and Newell have been unjustly enriched as a result of the wrongful acts and omissions further described herein.

93. TSC and Newell received and accepted said funds which in equity and good conscience does not belong to them and DAS has suffered detriment as a result thereof.

94. DAS, in justice and fairness, is entitled to full restitution in the amount of $661,000.00, equal to the value of the loan proceeds unlawfully retained by TSC, and is

further entitled to recover statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

WHEREFORE, Plaintiff demands judgment against TSC for restitution for the unjust enrichment of TSC and Alton Scott Newell, II, an individual, plus costs of court.

### Count VIII
### (Accounting)

95. Plaintiff, DAS, realleges and incorporates by reference the factual allegations of paragraphs 1-38 of the Complaint as if specifically set forth herein.

96. DAS is entitled to an order requiring the Defendants to disclose all payments made by DAS for equipment under the May 11, 2006, and May 19, 2006, sales agreements and to render an accounting to DAS of the use of those payments by Defendants.

97. DAS is further entitled to recover all such damages as are shown by the accounting to have been suffered by DAS, plus statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

WHEREFORE, Plaintiff demands an accounting from TSC and Alton Scott Newell, II, for the use of all payments made by DAS for equipment under the May 11, 2006, and May 19, 2006, sales agreements, plus costs of court.

    *s/ Deborah B. Hembree*
Robert E. Clute, Jr.   (CLUTR5519)
Deborah B. Hembree   (HEMBD7417)
Attorneys for Plaintiff,
 David's Auto Shredding, Inc.

OF COUNSEL:

JOHNSTONE, ADAMS, BAILEY, GORDON & HARRIS, L.L.C.
Post Office Box 1988
Mobile, Alabama   36633
Telephone (251) 432-7682
Facsimile (251) 432-0712

**Plaintiff Respectfully Requests Trial by Jury**

          *s/  Deborah Bittl Hembree*
Robert E. Clute, Jr.   (CLUTR5519)
Deborah B. Hembree   (HEMBD7417)
Attorneys for Plaintiff,
 David's Auto Shredding, Inc.
Post Office Box 1988
Mobile, Alabama 36633
Telephone (251) 432-7682
Facsimile (251) 432-0712

OF COUNSEL:

JOHNSTONE, ADAMS, BAILEY, GORDON & HARRIS, L.L.C.

**DEFENDANTS MAY BE SERVED AT:**

    The Shredder Company, LLC
    c/o Scott Newell
    Registered Agent
    6800 Market Street
    El Paso, TX  79915

    Alton Scott Newell, II
    6800 Market Street
    El Paso, TX  79915